2026 IL App (1st) 251757-U

No. 1-25-1757

Order filed July 29, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SHRIJI REAL ESTATE INVESTMENT, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 25 M 1701788 |
| | ) | |
| ALEXANDER YOUNIS, SHREE HARI OIL CORP., | ) | |
| OASIS CONVENIENCE, INC., and UNKOWN OCCUPANTS, | ) | Honorable |
| | ) | Regina Ann Mescall, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court did not err by denying commercial landlord's request for an order of eviction.

¶ 2    This appeal stems from an eviction dispute between commercial landlord, Shriji Real

Estate Investment, LLC (Shriji), and its tenant, Shree Hari Oil Corporation (Shree Hari Oil).

Following a bench trial, the circuit court denied Shriji's request for an order of eviction, based on

the court's finding that the landlord's 30-day notice to vacate and surrender possession was defective. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4     Alexander Younis, through his entity, Shree Hari Oil, owns and operates an Amoco Gas Station and convenience store located at 2300 Plum Grove Road, Rolling Meadows, Illinois (Gas Station). The real property upon which the Gas Station sits is owned by Shriji.

¶ 5     Shriji and Shree Hari Oil entered into a purported commercial lease agreement dated May 23, 2022, for the real property (Leased Premises). The lease was for 10 years, with rent set at $10,500 per month.

¶ 6     On July 10, 2024, Shriji filed a complaint in the circuit court against Shree Hari Oil, Alexander Younis, and all unknown occupants (collectively, defendants). Shriji alleged it was entitled to possession of the Leased Premises due to unpaid rent totaling $59,200. Attached to the complaint was a copy of a landlord's five-day notice.

¶ 7     Circuit court Judge Scott D. McKenna conducted a bench trial on Shriji's complaint on December 16, 2024. Shriji introduced the May 23, 2022 commercial lease agreement as a trial exhibit. At the trial's conclusion, Judge McKenna entered judgment in favor of defendants, finding that the five-day notice was defective. The order did not provide an explanation as to the basis of the judge's finding.

¶ 8     Shriji filed a second eviction complaint on February 3, 2025, naming the same defendants. Attached to the complaint was a copy of a landlord's 30-day notice to vacate and surrender

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

possession of the Leased Premises. The notice advised defendants that their tenancy was being terminated for delinquent rent in the amount of $161,049.50.

¶ 9    Circuit court Judge Regina Ann Mescall conducted a bench trial on the second complaint on June 13, 2025. Like Judge McKenna, Judge Mescall also entered judgment for defendants. Significant for this appeal, Judge Mescall determined that the May 23, 2022 commercial lease agreement was valid and that the parties were bound by its terms. Shriji argued at trial that the doctrine of collateral estoppel should have prevented Judge Mescall from considering the validity of the commercial lease agreement because in his earlier order following the first trial, Judge McKenna had found the lease invalid.

¶ 10    Shriji filed a posttrial motion to reconsider the judgment, again arguing that Judge McKenna's order should be given collateral estoppel effect. In support of this argument, Shriji pointed to the following language in Judge McKenna's order: "The Defendant has agreed to pay $10,500 monthly since July, 2024 to avoid further litigation, if agreeable to the Plaintiff." Shriji reasoned that when Judge McKenna left it up to the landlord (Shriji) to determine if it would accept future rent payments from defendants, this necessarily meant that he determined there was no valid lease agreement. In other words, Judge McKenna would not have left it up to the landlord to make such a determination, if there was a valid written lease agreement.

¶ 11    On September 2, 2025, Judge Mescall entered an order denying Shriji's motion to reconsider. The judge determined that the testimony of the defense witnesses was credible and, along with the trial exhibits, was sufficient to prove that the May 23 commercial lease agreement was valid. Judge Mescall again rejected Shriji's collateral estoppel argument.

¶ 12    Shriji filed this timely appeal.

¶ 13                                II. ANALYSIS

¶ 14    Defendants-Appellees failed to file a response brief on appeal. On May 14, 2026, this court, on its own motion, ordered that the case be taken for consideration on the record and appellant's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (a reviewing court may consider the merits of an appeal despite the absence of an appellee's brief where the record is simple and the claimed errors can be decided without the aid of the appellee's brief).

¶ 15    On appeal, Shriji first contends that Judge Mescall erred by mistakenly believing there were two leases. The record indicates that Judge Mescall mistakenly confused the business purchase agreement as a lease agreement. This confusion likely stemmed from the fact that the business purchase agreement contained an acknowledged scrivener's error of $14 million, while the lease agreement contained a total rent amount of $1.4 million. In any event, we find that any error in this regard was harmless, as it did not affect the judge's decision concerning the validity of the May 23, 2022, commercial lease agreement. Shriji concedes as much when it argues that:

> "No matter how many leases existed, Judge McKenna already ruled on the issue of whether there was a Lease. Even if there were two Leases, Judge McKenna's finding that there was no Lease or no valid Lease ends the issue, and it still has *collateral estoppel* effect on the second trial. Therefore, *collateral estoppel* prohibits the second trial court from ruling on the issue of whether or not there is a Lease or a valid Lease." (Emphasis in original.)

¶ 16    Shriji's primary argument on appeal is that Judge Mescall was collaterally estopped from finding that the May 23 commercial lease agreement was valid. Shriji contends Judge McKenna had earlier determined that there was no valid lease between the parties. As a result, Shriji argues

4

Judge Mescall should have accepted this determination and refrained from ruling on the lease's viability. In other words, for purposes of the second trial, the May 23 commercial lease agreement should never have been considered.

¶ 17    "Collateral estoppel is an equitable doctrine that precludes a party from relitigating an issue decided in a prior proceeding." *Herzog v. Lexington Township*, 167 Ill. 2d 288, 294 (1995). Collateral estoppel will apply when the following three elements are met: (1) the issue decided in the prior action is identical to the one presented in the current action; (2) a final judgment on the merits was entered in the prior action; and (3) the party against whom estoppel is asserted was a party, or in privity with a party, in the prior action. *Hurlbert v. Charles*, 238 Ill. 2d 248, 255 (2010). Whether the doctrine of collateral applies in a particular case presents a question of law, which we review *de novo*. *In re A.W.*, 231 Ill. 2d 92, 99 (2008).

¶ 18    Here, we confine our analysis to the second element of collateral estoppel as it is dispositive. Shriji sought to preclude litigation on the issue of whether the commercial lease agreement was valid.

¶ 19    Shriji points out that Judge McKenna allowed the landlord to decide whether it would accept future rent payments from defendants. Shriji argues that the judge would not have granted the landlord such decision-making authority, if there was a valid written lease agreement. Based on this, Shriji invites us to infer that Judge McKenna necessarily found that the May 23 commercial lease agreement was invalid, and that this finding should be given collateral estoppel effect in the instant litigation. We must decline this invitation.

¶ 20    Judge McKenna's order is brief and we recite it in its entirety:

> "Case coming on Bench Trial for Eviction Action, the Court hearing evidence, it is
> Ordered:

Judgment for Defendants in this matter due to defective 5-Day Notice. 24 L 9214 remains pending before Judge Sherlock.

The Defendant has agreed to pay $10,500 monthly since July, 2024 to avoid further litigation, if agreeable to the Plaintiff."

¶ 21 Other than this trial-court order, there is nothing in the record on appeal—trial transcript, certified report of proceedings, or acceptable substitute as provided by Illinois Supreme Court Rule 323 (eff. July 1, 2017)—that sheds light on Judge McKenna's reasoning for ruling in favor of defendants.[2] Shriji points out that the commercial lease agreement was presented at the first trial as an exhibit, but beyond that, there is nothing to indicate how Judge Mckenna viewed the lease.

¶ 22 We restrict our review of this issue to the plain language in Judge McKenna's order. A review of that order demonstrates that Judge McKenna did not find the May 23, 2022, commercial lease agreement invalid. Accordingly, we conclude that Shriji failed to satisfy the second element of collateral estoppel, as Judge McKenna did not render a final judgment on the merits finding that the May 23 commercial lease agreement was invalid.

¶ 23                            II. CONCLUSION

¶ 24 For the foregoing reasons, we affirm Judge Mescall's judgment denying Shriji's request for an order of eviction.

¶ 25 Affirmed.

---

[2]Illinois Supreme Court Rule 323(a) provides that the appellant has the responsibility to ensure that the record on appeal contains a report of proceedings, a bystander's report, or an agreed statement of facts including all the evidence pertinent to the issues on appeal. See *In re Marriage of Thomsen*, 371 Ill. App. 3d 236, 241 (2007).